**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

ELSIE FONT-LLACER-DE-PUEYO,

   **Plaintiff**,

      v.

FEDERAL DEPOSIT INSURANCE
CORPORATION as receiver for R-G
PREMIER BANK, ET ALS.,

   **Defendants**.

CIV. NO. 10-2086 (PG)

## OPINION AND ORDER

Before the court are the motions requesting the dismissal of the plaintiff's claims filed by co-defendants Federal Deposit Insurance Corporation ("FDIC-R"), as Receiver for R-G Premier Bank of Puerto Rico ("R-G Premier Bank") and Scotiabank of Puerto Rico Inc. ("Scotiabank"). See Dockets No. 8-9. For the reasons set forth below, the court **GRANTS IN PART AND DENIES IN PART** the FDIC-R's motion to dismiss (Docket No. 8) and **DENIES WITHOUT PREJUDICE** Scotiabank's motion to join (Docket No. 9).

### I. BACKGROUND

On November 5, 2010, plaintiff Elsie Font Llacer de Pueyo ("Font" or "Plaintiff"), filed the above-captioned claim against R-G Premier Bank, R-G Mortgage, the Federal Deposit Insurance Corporation and Scotiabank (hereinafter collectively referred to as "Defendants"). Font alleges she was discriminated against on the basis of age and seeks redress under the Age Discrimination in Employment Act ("ADEA" or "the Act"), 29 U.S.C. § 623. Font also pleads supplemental state law claims of age discrimination under Puerto Rico's anti-discrimination statute, Law No. 100 of June 30, 1959 ("Law No. 100"), P.R. LAWS ANN. tit. 29, § 146, *et seq.;* of wrongful discharge under Puerto Rico's wrongful termination statute, Law No. 80 of May 30, 1976 ("Law No. 80"), P.R. LAWS ANN. tit. 29, § 185, *et seq.;* of retaliation pursuant to Puerto Rico's anti-retaliation statute ("Law No. 115"), P.R. LAWS ANN tit. 29, § 194 *et seq.;* and, of damages under Puerto Rico's general tort statute, Article 1802 of the Puerto Rico Civil Code ("Article 1802"), P.R. LAWS ANN. tit. 31, § 5141.

CIV. NO. 10-2086 (PG)                                                    Page 2

At the time the complaint was filed, Plaintiff alleged to be a 72-year-old who had been working for R-G Premier Bank for thirty-two (32) years. See Docket No. 1 at ¶ 5-6. Font stated in her complaint that prior to her forced resignation, she occupied the position of Senior Manager Vice-President earning more than $98,000.00. Id. at ¶ 9. On or about December of 2009, Font alleges that her supervisor, Steven Velez ("Velez"), informed her of several changes in the terms and conditions of her employment, including a reduction in responsibilities, status, participation in meetings and office space. According to Plaintiff, after her return from her Christmas vacations, Velez announced to her that she would report to a much younger and less experienced employee, namely, Peter Torres. Id. at ¶ 13. Font claims in her complaint that these actions were the result of age discrimination and forced her to involuntarily resign.[1] Id. at ¶ 15. Ultimately, Plaintiff now alleges that she was discriminated against because of her age and discharged without just cause. Id. As a result of these events, Font filed charges of age discrimination before the EEOC on March 5, 2010 and received a right-to-sue letter in August of 2010. Id. at ¶ 4.

Finally, Plaintiff also states in her complaint that after "Scotiabank acquired RG's banking operations," id. at ¶ 19, sometime in 2009, the FDIC became "successor in interest of RG," id. at ¶ 18, and insofar as "Scotiabank acquired RG's banking operations," id. at ¶ 19, it consequently also became a successor in interest of Plaintiff's employer "under the Doctrine of Successor Employer." Id.

On January 10, 2011, the FDIC-R filed a motion to substitute party, wherein it informed the court that on April 30, 2010, the FDIC was appointed receiver of R-G Premier Bank by order of the Commissioner of Financial Institutions of Puerto Rico. See Docket No. 5. Accordingly, the FDIC-R requested that it be substituted as the defendant in the place of R-G Premier Bank. See id. On February 28, 2011, the court granted its request. See Docket No. 7.

On May 25, 2011, FDIC–R filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim. See Docket No. 8. Co-defendant Scotiabank filed a motion to join the FDIC-R's motion to dismiss. See Docket

---

[1] At this stage of the proceedings, the court is still unaware of the Plaintiff's exact date of resignation or constructive discharge, as alleged. However, for purposes of this analysis the court will thus assume that the claims against the defendants accrued before Font filed the charges before the EEOC on March 5, 2010.

No. 9. This court granted Plaintiff until July 13, 2011 to respond to these motions, see Docket No. 11, however, on said date, the Plaintiff filed a second motion for extension of time until July 18, 2011 to oppose the pending motions, see Docket No. 12. On July 20, 2011, this court entered an order finding this second request as moot inasmuch as the requested extension had elapsed and Plaintiff had yet to file an opposition. See Docket No. 13. On July 28, 2011, FDIC–R filed a request to deem its motion to dismiss as unopposed (Docket No. 14), which the court granted (Docket No. 17).

Thereafter, the case was stayed pending the bankruptcy proceedings of R-G Mortgage. See Docket No. 18. On January 23, 2013, R-G Mortgage and the FDIC-R filed a motion to lift the stay and requesting that the court adjudge the pending motions to dismiss in their favor. See Docket No. 21.

## II. STANDARD OF REVIEW

Motions to dismiss brought under FED.R.CIV.P. 12(b)(1) and 12(b)(6) are subject to the same standard of review. See Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir.1994). Firstly, when ruling on a motion to dismiss for failure to state a claim, a district court "must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir.2009) (citing LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir.1998)). Additionally, courts "may augment the facts in the complaint by reference to (i) documents annexed to the complaint or fairly incorporated into it, and (ii) matters susceptible to judicial notice." Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir.2008) (internal citations and quotation marks omitted).

In determining whether dismissal of a complaint is appropriate pursuant to Rule 12(b)(1) or 12(b)(6), the court must keep in mind that "[t]he general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief. … This short and plain statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir.2009) (internal citations and quotation marks omitted). Nevertheless, "even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has … held that to survive a motion to dismiss, a complaint must allege a plausible entitlement to relief."

Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir.2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, … , on the assumption that all the allegations in the complaint are true (even if doubtful in fact)…." Twombly, 550 U.S. at 555 (internal citations and quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

"In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. April 1, 2011) (citing Twombly, 550 U.S. at 555) (internal quotation marks omitted). Although a complaint attacked by a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "does not need detailed factual allegations, … , a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do … ." Twombly, 550 U.S. at 555 (internal citations and quotation marks omitted). That is, the court "need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir.2009) (citing Iqbal, 129 S.Ct. at 1960). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." Ocasio-Hernandez, 640 F.3d at 12 (citing Iqbal, 129 S.Ct. at 1951).

When evaluating the plausibility of a legal claim, a court may not "attempt to forecast a plaintiff's likelihood of success on the merits; a well-pleaded complaint may proceed even if … a recovery is very remote and unlikely." Ocasio-Hernandez, 640 F.3d at 12-13 (citing Twombly, 550 U.S. at 556). Thus, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Ocasio-Hernandez, 640 F.3d at 13.

## III. DISCUSSION

### A. Dismissal of Claims against FDIC-C

In its motion to dismiss, the FDIC-R requests the dismissal against the FDIC in its corporate capacity, inasmuch as it is not a proper party defendant in this case. See Docket No. 8. The FDIC-R explains that the FDIC "operates in two, distinct roles by law. First, as the Receiver of failed banks; and second, as a corporate entity in all other aspects, such as protecting customer deposits." Id. at page 3. According to the FDIC-R, the FDIC in its corporate capacity cannot be held responsible for a failed bank's liabilities or the receivership's actions, and thus, any claims against it should be dismissed. Id. (citing The Credit Life Insurance Company v. FDIC, 870 F.Supp. 417, 421 (D.N.H. 1994))

Having reviewed the cited applicable caselaw, the court agrees to the dismissal of any claims against the FDIC in its corporate capacity. As a result, the FDIC-R is the only proper party before the court in the instant action.

### B. Failure to Exhaust Administrative Claims Process

The Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") "establishes that when the FDIC is acting as a conservator or receiver, it succeeds to "all the rights, titles, powers, and privileges … and the assets of the insured depository institution."" Maldonado-Torres v. F.D.I.C. ex rel. R-G Premier Bank, 839 F.Supp.2d 511, 515 (D.P.R. 2012) (citing 12 U.S.C. § 1821(d)(2)(A)(i)). "FIRREA also establishes a mandatory administrative claims process, which must be exhausted by every claimant seeking payment from the assets of the affected institution." Id. (citing 12 U.S.C. § 1821(d)(13)(D)). "The administrative claims process, set forth in 12 U.S.C. §§ 1821(d)(3)-(13), requires that all claims be submitted to the FDIC by a date established by the receiver." Rodriguez v. F.D.I.C., No. 10–1656, 2011 WL 4529929, at *3 (D.P.R. September 27, 2011). "The First Circuit, in conformance with several other circuits, has found that compliance with and exhaustion of the administrative remedies contained in FIRREA is required." Arends v. Eurobank and Trust Co., 845 F.Supp. 60, 63 (D.P.R. 1994) (citing Marquis v. F.D.I.C., 965 F.2d 1148, 1151 (1st Cir.1992)).

In its motion to dismiss, the FDIC-R argued that the claim for wrongful discharge pursuant to Law No. 80, for retaliation pursuant to Law No. 115 and for damages pursuant to Article 1802 should be dismissed inasmuch as Plaintiff failed to assert them in her administrative claim. See Docket No. 8 at page

CIV. NO. 10-2086 (PG)                                                          Page 6

14. In support of this argument, the FDIC-R attached a copy of the Plaintiff's Proof of Claim Form[2] dated August 3, 2010, wherein Font describes her claim as one of "discrimination in employment due to age." See Docket No. 8-1. However, in the document attached, the Plaintiff also wrote: "please see attached sworn statement," id.. The sworn statement the Plaintiff makes reference to, however, was not attached to the FDIC-R's motion to dismiss. Moreover, in the notice of disallowance of claim, the FDIC-R's disallowed the Plaintiff's claims for wrongful termination under Law No. 80 and illegal discrimination. Therefore, the court is unable to determine whether or not Plaintiff did in fact assert a wrongful termination claim in her administrative charges. Consequently, the FDIC-R's request that Font's wrongful discharge claim be dismissed for failure to exhaust the mandatory claims process is hereby DENIED WITHOUT PREJUDICE pending submission of excluded portion of administrative claim.[3]

The court notes, however, that Font's administrative claim as well as the FDIC-R's disallowance make no mention whatsoever of any charge of retaliation. There being no evidence on record that Font exhausted the administrative claims process as to a claim of retaliation, the court thus lacks jurisdiction to entertain the same. Font's claim for retaliation under Law No. 115 is hereby **DISMISSED WITH PREJUDICE.**

**C. Damages Claim under Article 1802**

Plaintiff alleges a cause of action for damages under Article 1802. The legal framework under Article 1802 "is that the provisions of the Civil Code are supplementary to special legislation." Rivera–Melendez v. Pfizer Pharm. Inc., 747 F.Supp.2d 336, 339 (D.P.R.2010).

> The Supreme Court of Puerto Rico has held that as a general rule, "in the face of conduct by an employer that has been typified and penalized by special labor legislation, the employee only has recourse to the relief of said Act, and is barred from seeking additional compensation under Article 1802 … ."

---

[2] This exhibit is authenticated by an affidavit from Rita F. Entsminger, Resolutions and Receivership Specialist/Claims Agent. See Docket No. 8-1.

[3] In the alternative, the FDIC-R requests that the wrongful discharge claim pursuant to Law No. 80 be disallowed because it constitutes a "penalty" under 12 U.S.C. § 1825(b)(2)&(3), and the FDIC-R is not liable for those types of claims. See Docket No. 80. Before analyzing this theoretical argument for which there is no on-point authority in this district, the FDIC-R is hereby ordered make the entire administrative record available to the court in order to determine first whether or not the Plaintiff complied with the mandatory administrative claims process.

CIV. NO. 10-2086 (PG)                                                   Page 7

Zayas-Ortiz v. Becton Dickinson Caribe, Ltd., 878 F.Supp.2d 351, 356 (D.P.R. 2012) (citing Reyes-Ortiz v. McConnell Valdes, 714 F.Supp.2d 234, 239 (D.P.R.2010)). "A plaintiff may only bring an additional Article 1802 claim if it is based on tortious or negligent conduct that is distinct from the conduct covered by the specific labor law." Zayas-Ortiz, 878 F.Supp.2d at 356. Because Font's claim under Article 1802 is based on the same facts that give rise to the asserted causes of action for discrimination and wrongful termination, the Article 1802 claim is superceded by these statutes. Accordingly, the court hereby **DISMISSES WITH PREJUDICE** Plaintiff's claim under Article 1802.

**D. Age Discrimination Claim under Law No. 100**

Law No. 100 states that any employer who discharges, lays off or discriminates against an employee because of his/her age, race, color, sex, social or national origin, social condition, political affiliation or political or religious ideology shall be liable to the employee "[f]or a sum equal to twice the amount of damages sustained by the employee or applicant for employment on account of such action … ." P.R. LAWS ANN. tit. 29, § 146(a)(1). "The doubling of the award is mandatory." Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc., 399 F.3d 52, 66 (1st Cir.2005)(citing Campos-Orrego v. Rivera, 175 F.3d 89, 96 (1st Cir.2001)).

In its motion to dismiss, the FDIC-R argues that the claim pursuant to Law No. 100 is preempted by FIRREA to the extent it is designed to punish an employer for illegal discrimination or retaliation, not merely compensate a plaintiff for his/her economic losses. See Docket No. 8 at page 8. Pursuant to FIRREA claims in the nature of penalties are barred:

> When acting as a receiver, the following provisions shall apply with respect to the Corporation:
> …
> (3) The Corporation shall not be liable for any amounts **in the nature of penalties or fines**, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.

12 U.S.C.A. § 1825(b). The FDIC-R suggests that because Law No. 100 provides for a statutory penalty that automatically doubles any amount of damages awarded, these statutory damages are clearly in the nature of a penalty and are thus statutorily barred by Section 1825(b). See Docket No. 8 at page 8. This court, thus, must determine whether the double damages provided under section 146(a)(1) of Law No. 100 constitute a penalty.

CIV. NO. 10-2086 (PG)                                                    Page 8

Sister district courts have held that state statutes that award **treble** damages to prevailing plaintiffs are disallowed by Section 1825(b) because they are in the nature of penalties. In Deerborne Cottages, LLC v. First Bank, No. 1:11cv178, 2012 WL 1835240 (W.D.N.C. April 09, 2012), the United States District Court for the Western District of North Carolina held that a claim for *treble* damages under a North Carolina statute was barred by Section 1825 because an award of *treble* damages, "like an award of punitive damages, is in the nature of a penalty." Id. at *8 (citing Delta Marine, Inc. v. Whaley, 813 F.Supp. 414, 416-17 (E.D.N.C.1993)). In addition, in Horn v. F.D.I.C., No. ELH-11-2127, 2011 WL 6132309 (D.Md. Dec. 8, 2011), the United States District Court for the District of Maryland held that the *treble* damages provisions under the Maryland Wage Payment and Collection Law was in the nature of a penalty or fine and, thus, barred by Section 1825(b)(3). See id. at *1.

However, in Rodriguez-Torres, the First Circuit Court of Appeals rejected a defendant's argument that the *double* damages available under Puerto Rico Law No. 100 was punitive in nature. See Rodriguez-Torres, 399 F.3d at 67. Therein, the appeals court stated that "the double damage provision [of Law No. 100] is most likely compensatory." Id. Moreover, in Torres v. Caribbean Forms Mfr., 286 F.Supp.2d 209 (D.P.R. 2003), this court held that the double damages under Puerto Rico discrimination statute Law. No. 100, which is granted to all victorious plaintiffs, is not punitive in nature but a compensatory measure of damages imposed on all employers who intentionally discriminate against employees. Id. at 220. See also Baez-Viera v. Cooperativa Abraham Rosa, No. 08-2045, 2012 WL 4663664, at *1 (D.P.R. October 01, 2012) ("Courts have been consistent in finding that Puerto Rico Laws 69, 80 and 100 are all compensatory, or remedial, in nature.").

Because this court is bound by the First Circuit's interpretation of the compensatory nature of the damages award provision of Law No. 100, we must **DENY** the FDIC-R's request that this claim be dismissed.

**E. Liquidated Damages under ADEA**

In its motion to dismiss, the FDIC-R also argues that any request for liquidated damages under ADEA should be dismissed because they are in the nature of a penalty and, thus, the Plaintiff cannot recover these damages against the FDIC-R as a matter of law. See Docket No. 8 at page 8. The court agrees. "[T]he Supreme Court has held the liquidated damages provided for in the ADEA are punitive." Rhoads v. F.D.I.C., 956 F.Supp. 1239, 1261 (D.Md.1997) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 125-26 ("The

legislative history of the ADEA indicates that Congress intended for liquidated damages to be punitive in nature.")). Therefore, any request for liquidated damages is disallowed by Section 1825(b) and is thus **DISMISSED WITH PREJUDICE** as to the FDIC-R.

**F. Equitable Relief**

In its motion to dismiss, the FDIC-R argues that this court lacks jurisdiction to impose equitable or injunctive remedies over the FDIC, when acting as a receivership, pursuant to 12 U.S.C.A. § 1821(j), which states that:

> [e]xcept as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

12 U.S.C.A. § 1821(j). In support of its contention, the FDIC-R cites Telematics Intern., Inc. v. NEMLC Leasing Corp., 967 F.2d 703 (1st Cir.1992), wherein the First Circuit Court of Appeals held that Congress enacted 12 U.S.C.A. § 1821(j) as a broad limit on the power of the courts to interfere with the FDIC's efforts "to enable the FDIC to move quickly and without undue interruption to preserve and consolidate the assets of the failed institution … ." Id. at 705. The First Circuit concluded, in light of the facts of said particular case, that it lacked jurisdiction to enjoin the FDIC when the latter was acting pursuant to its statutory powers as receiver. See id. at 708. Pursuant to this holding, the FDIC-R now argues that this court lacks jurisdiction to impose equitable remedies, such as "forcing retention by seniority, reinstatement, or other remedial actions by the employer (now succeeded by FDIC-R)." See Docket No. 8.

The court agrees with the FDIC-R's argument that we lack jurisdiction to impose equitable remedies upon it and its request is thus **GRANTED**. Accordingly, Font's claim for equitable remedies against the FDIC-R is hereby **DISMISSED WITH PREJUDICE.**

**G. Attorney Fees**

In her complaint, the Plaintiff also seeks an award of statutory attorney's fees. See Docket No. 1. The FDIC-R seeks the dismissal of this request arguing that a recovery of attorneys' fees against it would run afoul of the requirement that the assets of a failed bank be ratably distributed among the bank's creditors holding approved or adjudicated claims. Second, the FDIC-R claims that an award of attorney fees constitutes yet another impermissible penalty. See Docket No. 8 at pages 12-14.

CIV. NO. 10-2086 (PG) Page 10

Firstly, this court finds that the supporting authority cited by the FDIC-R is hardly on point. Second, the ADEA authorizes an award of attorney's fees to *prevailing* parties. See McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 357 (1995); see 29 U.S.C. §§ 216(b), 626(b). Therefore, until the Plaintiff does in fact become a prevailing party in this case, the court need not consider whether or not an award of attorney's fees is compensatory or punitive and thus barred by Section 1825(b). This controversy is not yet ripe for adjudication in the instant case and as a result, the FDIC-R's request that the Plaintiff's claim for attorney fees be dismissed is hereby **DENIED WITHOUT PREJUDICE**.

**H. Dismissal of Claims against Scotiabank**

In her complaint, the Plaintiff asserts that because Scotiabank acquired R-G Premier Bank's operations, the former became liable to Plaintiff under the doctrine of successor employer. See Docket No. 1 at ¶¶18-19. After R-G Premier Bank was declared insolvent and the FDIC-R was appointed receiver on April 30, 2010, Scotiabank argues that "R-G Premier Bank ceased to exist and its employees were terminated permanently." See Docket No. 9 at page 5. As a result, Scotiabank contends that "it is not liable for any damages resulting from [Plaintiff's] employment with R-G Premier Bank. Scotiabank is not RG Premier Bank successor employer and at no time became Plaintiff's employer." Id. at page 3.

The arguments set forth by Scotiabank are not new to this court. In Arends v. Eurobank and Trust Co., 845 F.Supp. 60 (D.P.R. 1994), the employees of a failed bank sued Eurobank & Trust Co. ("Eurobank"), the purchaser of a substantial portion of the failed bank's assets, seeking severance benefits under Law No. 80. In Arends, this court found that Eurobank and the FDIC had produced affidavits and documents that properly evinced that plaintiffs' were terminated for just cause when their employer banking institution was declared insolvent. See Arends, 845 F.Supp. 62-63. As a result, this court found that Eurobank, as the new acquirer, was not liable to the plaintiffs. Id. at 63.

In Garcia-Rosado v. Scotiabank, No. 12-1383, 2013 WL 209294 (D.P.R. January 17, 2013), the plaintiff, a former employee of R-G Premier Bank, filed suit against Scotiabank and the FDIC alleging age discrimination in violation Law No. 100 and unjust dismissal in violation of Law No. 80. In said case, defendant Scotiabank argued, among other things, that it was not liable to the plaintiff because it was not R-G Premier Bank's successor employer nor assumed the failed bank's liabilities. See id. at *5. Therein, this court ruled that

CIV. NO. 10-2086 (PG)                                                      Page 11

"[t]he determination of whether one business is the successor to another is "primarily … factual in nature and is based upon the totality of the circumstances of a given situation."" Id. at *6 (citing Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 43 (1987)). In fact, this court concluded that the evidence the plaintiff had presented created a genuine dispute as to whether Scotiabank could be considered R-G Premier Bank's successor, and thus, the plaintiff's claims survived summary judgment. See 2013 WL 209294 at *6.

It stems from this court's decisions in both Arends and Garcia-Rosado that in order for this court to be in a position to determine whether or not an acquiring bank is the successor of a failed bank, a factual record must be presented. Here, Scotiabank merely files a motion to join the FDIC-R's request for dismissal wherein it states, without more, that the doctrine of successor employer is inapplicable in this case. This court is thus forced to **DENY WITHOUT PREJUDICE** Scotiabank's request for dismissal (Docket No. 9) pending a proper evidentiary showing in support of its argument.

### IV. CONCLUSION

For the reasons stated above, defendant FDIC-R's motion to dismiss (Docket No. 8) is hereby **GRANTED IN PART AND DENIED IN PART** and co-defendant Scotiabank's motion to dismiss (Docket No. 9) is hereby **DENIED WITHOUT PREJUDICE**. Plaintiff's claims against the FDIC in its corporate capacity as well as her claims of retaliation, for damages under Article 1802, and requests for liquidated damages and equitable remedies against the FDIC-R are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, March 25, 2013.

*S/ JUAN M. PEREZ-GIMENEZ*
JUAN M. PEREZ-GIMENEZ
SENIOR U.S. DISTRICT JUDGE