THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ELSIE FONT LLACER DE PUEYO**

    Plaintiff,

        v.

**RG PREMIER BANK OF PUERTO RICO; RG PREMIER MORTGAGE INC.; SCOTIABANK OF PUERTO RICO, INC.; THE FEDERAL DEPOSIT INSURANCE CORPORATION,**

    Defendants.

Civil Case. NO. 10-2086 (PG)

## OPINION AND ORDER

Pending before the Court is co-defendant Scotiabank's motion for summary judgment (Docket No. 28). Therein, Scotiabank moved for summary disposition of the complaint, inasmuch as the present case poses no genuine issues of material fact and as a matter of law the instant complaint should be dismissed against it. For the reasons set forth below, this Court **GRANTS** the co-defendant's Motion for Summary Judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On November 5, 2010, Plaintiff Elsie Font Llacer de Pueyo ("Font" or "Plaintiff") filed the above-captioned claim against R-G Premier Bank, R-G Mortgage, the Federal Deposit Insurance Corporation and Scotiabank (hereinafter collectively referred to as "Defendants"). Font alleges she was discriminated against on the basis of age and seeks redress under the Age Discrimination in Employment Act ("ADEA" or "the Act"), 29 U.S.C. § 623. Font also pleads supplemental state law claims of age discrimination under Puerto Rico's anti-discrimination statute, Law No. 100 of June 30, 1959 ("Law No. 100"), P.R. LAWS ANN. tit. 29, § 146, *et seq.;* of wrongful discharge under Puerto Rico's wrongful termination statute, Law No. 80 of May 30, 1976 ("Law No. 80"), P.R. LAWS ANN. tit. 29, § 185, *et seq.;* of retaliation pursuant to Puerto Rico's anti-retaliation statute ("Law No. 115"), P.R. LAWS ANN tit. 29, § 194 *et seq.;* and, of damages under Puerto Rico's general tort statute, Article 1802 of the Puerto Rico Civil Code ("Article 1802"), P.R. LAWS ANN. tit. 31, § 5141.

At the time the complaint was filed, Plaintiff alleged to be a 72-year-old who had been working for R-G Premier Bank for thirty-two (32)

years. See Docket No. 1 at ¶ 5-6. Font stated in her complaint that prior to her forced resignation, she occupied the position of Senior Manager Vice-President earning more than $98,000.00. Id. at ¶ 9. On or about December of 2009, Font alleges that her supervisor, Steven Velez ("Velez"), informed her of several changes in the terms and conditions of her employment, including a reduction in responsibilities, status, participation in meetings and office space. According to Plaintiff, after her return from her Christmas vacations, Velez announced to her that she would report to a much younger and less experienced employee, namely, Peter Torres. Id. at ¶ 13. Font claims in her complaint that these actions were the result of age discrimination and forced her to involuntarily resign. Id. at ¶ 15. Ultimately, Plaintiff now alleges that she was discriminated against because of her age and discharged without just cause. Id. As a result of these events, Font filed charges of age discrimination before the EEOC on March 5, 2010 and received a right-to-sue letter in August of 2010. Id. at ¶ 4.

Finally, Plaintiff also states in her complaint that after "Scotiabank acquired RG's banking operations," id. at ¶ 19, sometime in 2009, the FDIC became "successor in interest of RG," id. at ¶ 18, and insofar as "Scotiabank acquired RG's banking operations," id. at ¶ 19, it consequently also became a successor in interest of Plaintiff's employer "under the Doctrine of Successor Employer." Id.

On January 10, 2011, the FDIC-R filed a motion to substitute party, wherein it informed the Court that on April 30, 2010, the FDIC was appointed receiver of R-G Premier Bank by order of the Commissioner of Financial Institutions of Puerto Rico. See Docket No. 5. Accordingly, the FDIC-R requested that it be substituted as the defendant in the place of R-G Premier Bank. See id. On February 28, 2011, the Court granted its request. See Docket No. 7.

On May 25, 2011, FDIC-R filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim. See Docket No. 8. Co-defendant Scotiabank filed a motion to join the FDIC-R's motion to dismiss. See Docket No. 9. This Court granted Plaintiff until July 13, 2011 to respond to these motions, see Docket No. 11, however, on said date, the Plaintiff filed a second motion for extension of time until July

18, 2011 to oppose the pending motions, see Docket No. 12. On July 20, 2011, this Court entered an order finding this second request as moot inasmuch as the requested extension had elapsed and Plaintiff had yet to file an opposition. See Docket No. 13. On July 28, 2011, FDIC-R filed a request to deem its motion to dismiss as unopposed (Docket No. 14), which the Court granted (Docket No. 17).

Thereafter, the case was stayed pending the bankruptcy proceedings of R-G Mortgage. See Docket No. 18. On January 23, 2013, R-G Mortgage and the FDIC-R filed a motion to lift the stay and requesting that the Court adjudge the pending motions to dismiss in their favor. See Docket No. 21.

This Court then issued an Opinion and Order (Docket No. 22). Therein, it denied without prejudice co-defendant Scotiabank's motion to dismiss, after finding that "in order for the Court to be in a position to determine whether or not an acquiring bank is the successor of a failed bank, a factual record must be presented." Id. at page 12.[1] Subsequently, co-defendant Scotiabank moved for summary judgment (Docket No. 28) and Plaintiff filed an opposition thereto (Docket No. 37). In short, co-defendant Scotiabank asserts that it is not a successor employer of R-G and thus, not liable for claims arising from R-G's actions, including alleged discrimination or constructive discharge. In the alternative, Scotiabank alleges that if this Court was to find that Plaintiff is entitled to remedies resulting from her alleged claims and constructive discharge from R-G, the proper party to respond is not Scotiabank. (Docket No. 28-1). For the reasons set forth below, this Court **GRANTS** co-defendant's motion for summary judgment.

## II.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir.2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it

---

[1] Also, the Court granted in part and denied in part FDIC-R's motion to dismiss, and dismissed with prejudice several claims against the same. See Docket No. 22.

potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir .2004).

To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir.1997), through definite and competent evidence. Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir.1994). Once the movant has averred that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-movant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990) (citations omitted). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir.2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

At the summary judgment juncture, the Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir.2002). The Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000). This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Id.

### III. FACTUAL FINDINGS

The following undisputed material facts are appropriately supported in co-defendant Scotiabank's statement of material facts submitted in accordance with Local Rule 56. Also, said facts were admitted by Plaintiff in their entirety:[2]

---

[2] Even though the Plaintiff denies co-defendant's statement No. 11 in its opposition (Docket No. 37-2), plaintiff failed to support its contention with evidence or record citation. The court notes that pursuant to Local Rule 56(c), a non-movant's opposing statement of material facts shall admit, deny or qualify the facts submitted by the movant, and in so doing, "shall support each denial or qualification by a record citation

1. Scotiabank is a banking institution that provides personal and commercial banking services, such as deposits, checking accounts and loans.

2. R-G Premier Bank ("RG") was a bank in Puerto Rico offering business and consumer financial services, including banking, trust and brokerage services.

3. The Federal Deposit Insurance Corporation ("FDIC") is an independent agency of the federal government whose primary duty is to insure deposits in banks and thrift institutions up to $250,000, and to identify, monitor and address risks to the deposit insurance funds, and limit the effect on the economy and the financial system when a bank of thrift institution fails.

4. The FDIC insures more than $7 trillion of deposits in U.S. banks and thrifts-deposits in virtually every bank and thrift in the country. The FDIC directly examines and supervises more than 4,900 banks and savings banks for operational safety and soundness.

5. To protect insured depositors, the FDIC responds when a bank or thrift institution fails. Institutions generally are closed by their chartering authority-the state regulator, the Office of the Comptroller of the Currency, or the Office of Thrift Supervision. The FDIC has several options for resolving institution failures, but the one most used is to sell deposits and loans of the failed institution to another institution.

6. The Puerto Rico Office of the Commissioner for Financial Institutions ("OCIF") is the public office whose primary responsibility is to supervise and regulate Puerto Rico's financial sector to ensure its safety and soundness, as well as to oversee a strict adherence to all applicable laws and regulations.

---

as required by this rule." Local Rule 56(c). "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Local Rule 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." Id.; See also Sánchez-Figueroa v. Banco Popular de Puerto Rico, 527 F.3d 209, 213-14 (1st Cir.2008). Having the Plaintiff failed to abide by the herein cited rule, the fact she denied shall be deemed admitted.

7. Plaintiff began working for R-G occupying the position of "Senior Manager Vice President."
8. In December 2009 Plaintiff was allegedly informed of substantial changes in the terms and conditions of her employment that eventually led to her alleged demotion and constructive discharge.
9. On February 25, 2010, Plaintiff subscribed a sworn statement, as part of her Charge before the Antidiscrimination Unit, detailing R-G's alleged adverse actions and how those actions were implemented to force her resignation.
10. After those events, on April 30, 2010, the OCFI closed R-G because it was insolvent, the OCFI also assumed control of R-G for its total liquidation and appointed the FDIC to serve as its receiver. The FDIC accepted the appointment as Receiver of the depository institution.
11. After the intervention by the Commissioner of Financial Institutions all of R-G Premier Bank employees were terminated by the FDIC due to the closing of said institution.
12. Plaintiff never applied for employment nor has she ever been employed by Scotiabank.
13. The FDIC-R exercised its option to preserve much of the failed bank's business operations through the implementation of a Purchase and Assumption (P&A) transaction with a healthy financial institution, namely, an "assuming bank." 12 U.S.C. § 1823 (c)(2)(a).
14. Specifically, the FDIC-R entered into a P&A Agreement with Scotiabank, whereby Scotiabank assumed the insured deposits of R-G and acquired certain assets formerly held by R-G.
15. Scotiabank did not assume or acquire any obligation to R-G's employees under the P&A Agreement; to the contrary, the P&A Agreement specifically provides that any such liabilities remained with the FDIC-R.
16. As part of the P&A Agreement, the FDIC-R agreed to indemnify Scotiabank for certain liabilities that Scotiabank did not assume, and which are included in Section 12 of the same. The P&A Agreement specifically states in its Section 12.1:

> **12.1 Indemnification of Indemnities.** From and after Bank Closing and subject to the limitations set forth in this Section and Section 12.6 and compliance by the Indemnities with Section 12.2, the Receiver agrees to indemnify and hold harmless the Indemnities against any and all costs, losses, liabilities, expenses (including attorneys' fees) incurred prior to the assumption of defense by the Receiver pursuant to paragraph (d) of Section 12.2, judgments, fines and amounts paid in settlement actually and reasonably incurred in connection with claims against any Indemnities based on liabilities of the Failed Bank that are not assumed by the Assuming Institution pursuant to this Agreement or subsequent to the execution hereof by the Assuming Institution or any Subsidiary or Affiliate of the Assuming Institution for which indemnification is provided hereunder in (a) of this Section 12.1, subject to certain exclusions as provided in (b) of this Section 12.1:
> […]
> (3) claims based on the rights of any present or former director, officer, employee or agent as such of the Failed Bank or of any Subsidiary or Affiliate of the Failed Bank;
> (4) claims based on any action or inaction prior to Bank Closing of the Failed Bank, its directors, officers, employees or agents as such, or any Subsidiary or Affiliate of the Failed Bank, or the directors, officers, employees or agents as such of such Subsidiary or Affiliate; […].

17. The P&A Agreement specifically states in Section 12.9(a):

   > **12.9 Successor Liability under Puerto Rico Act 80.** Notwithstanding any other provision in this Agreement, from and after Bank Closing:
   > (a) Any claim by a failed Bank employee against the Assuming institution and based, in whole or in part, on any successor liability arising by operation of law pursuant to Puerto Rico Act. No. 80 of May 30, 1976, as amended ("Act 80"), including a claim for severance or enhanced severance, shall be subject to indemnity under Section 12.1(a)(3) and shall not be excluded from liability by reason of Section 12.1(b), other than a claim for salary for the period from the Bank closing until the list is provided to the Receiver."

18. R-G's alleged unlawful employment actions occurred before the OCFI closed R-G because of insolvency, before the FDIC-R was

>           appointed as receiver of the fail bank, and before the FDIC-R
>           entered into a P&A Agreement with Scotiabank.

### IV.  DISCUSSION

**A. Claim Against Scotiabank Pursuant to the Doctrine of Successor Employer**

In her complaint, the Plaintiff asserts that because Scotiabank acquired R-G Premier Bank's operations, the former became liable to Plaintiff under the doctrine of successor employer. See Docket No. 1 at ¶¶ 18-19. After R-G Premier Bank was declared insolvent and the FDIC-R was appointed receiver on April 30, 2010, Scotiabank argues that "R-G Premier Bank ceased to exist and its employees were terminated permanently." See Docket No. 9 at page 5. As a result, Scotiabank contends that "it is not liable for any damages resulting from [Plaintiff's] employment with R-G Premier Bank. Scotiabank is not RG Premier Bank successor employer and at no time became Plaintiff's employer." Id. at page 3. The Court agrees.

Courts have previously held that "[a] successor employer is an employer which has acquired an already existing operation and which continues those operations in approximately the same manner as the previous employer." Peña-Villegas v. Oriental Bank, 11-1670 No. 30 at page 14 (D.P.R. August 24, 2012). "The determination of whether one business is the successor to another is primarily … factual in nature and is based upon the totality of the circumstances of a given situation." Garcia-Rosado v. Scotiabank, No. 12-1383, 2013 WL 209294, at *6 (D.P.R. January 17, 2013) (citing Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 43 (1987)). Moreover, this doctrine "requires continuity in the identity of the business before and after the change, whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations." Peña-Villegas v. Oriental Bank, 11-1670 No. 30 at page 14 (D.P.R. August 24, 2012).

Inasmuch as the Plaintiff here claims that Scotiabank is a successor employer of R-G, the Court shall consider Law No. 80 which states, in relevant part:

>           In the case of transfer of a going business, if the
>           new acquirer continues to use the services of the

Case 3:10-cv-02086-PG   Document 41   Filed 11/20/13   Page 9 of 11
Civil No. 10-2086(PG)                                               Page 9

>                employees who were working with the former owner,
>                such employees shall be credited with the time they
>                have worked in the basis under former owners. In
>                the event that the new acquirer chooses not to
>                continue with the services of all or any of the
>                employees and hence does not become their employer,
>                the former employer shall be liable for the
>                compensation provided herein, and the purchaser
>                shall retain the corresponding amount from the
>                selling price stipulated with respect to the
>                business. In case he discharges them without good
>                cause after the transfer, the new owner shall be
>                liable for any benefit which may accrue under
>                sections 183a-185l of this title to the employee
>                laid off. P.R. Laws Ann. tit. 29 § 185f.

P.R. LAWS ANN. TIT. 29 § 185(f).

In the present case, the record demonstrates that R-G Premier Bank was declared insolvent and was involuntarily liquidated by the OCFI. Thereafter, the OCFI designated the FDIC as receiver of the failed bank's assets. According to the undisputed material facts, the FDIC terminated all of R-G Premier Bank's employees due to the closing of said institution. Courts have previously deemed these facts alone sufficient to determine that the successor employer doctrine is inapplicable to a given case. See Alvarado-Rivera v. Oriental Bank and Trust, No. 11-1458 2012 WL 6213305 (D.P.R. Dec. 13, 2012) (finding that the mere fact that a failed bank was closed on insolvency grounds and that the FDIC dismissed all employees confirms that the acquiring bank was not a successor employer and thus, was not liable for severance benefits accrued during Plaintiff's employment with the failed bank); Arends v. Eurobank and Trust Co., 845 F.Supp. 60 (D.P.R. 1994) (finding that a bank that acquired a substantial portion of failed bank's assets and liabilities was not liable to failed bank's former employees for severance benefits under Puerto Rico statute requiring such benefits when employees are terminated without just cause); Peña-Villegas v. Oriental Bank, 11-1670 No. 30 (D.P.R. August 24, 2012) (finding that a bank's acquisition of some of failed bank's assets and deposits by means of a transaction executed with FDIC-R did not turn the first into the successor of the latter).

The record also reflects that Scotiabank did not carry on R-G's business operations nor the latter's identity. Scotiabank, rather, kept its own operations after obtaining some assets of the failed bank from

the FDIC-R. Consequently, this Court finds that acquiring some of R-G's assets pursuant to the P&A Agreement with the FDIC did not turn Scotiabank into a successor employer. Thus, Scotiabank is "not accountable for any cause of action arising out of the Plaintiff's former employment." Alvarado-Rivera v. Oriental Bank and Trust, No. 11-1458, 2012 WL 6213305, at *4 (D.P.R. Dec. 13, 2012).

On a separate point, the Court notes that the conduct that gave rise to the Plaintiff's claims took place while she worked for R-G prior to the bank's insolvency. Furthermore, the record reflects that the Plaintiff was at no time employed by Scotiabank. Thus, we find that insofar as Plaintiff never worked for Scotiabank, the latter "cannot be directly liable as an employer under Puerto Rico law." Arends v. Eurobank and Trust Co., 845 F.Supp. at 63.

**B. Co-defendant Scotiabank's argument that it did not agree to respond to R-G Premier Bank's former employees claims**

In its motion for summary judgment, co-defendant Scotiabank also asserts that if this Court was to find that the Plaintiff is entitled to remedies resulting from her alleged claims and constructive discharge from R-G, the proper party to respond is not Scotiabank. This, because pursuant to the P&A Agreement, Scotiabank did not agree to respond to claims from R-G former employees related to their employment with said entity. To that effect, Scotiabank cites extensive caselaw wherein Courts have determined that, unless they agree otherwise, the receiver and not the acquiring bank is the legal successor that assumes liabilities of the failed bank. See Docket No. 28-1. However, having found that Scotiabank is not a successor employer, and hence, not directly liable to the Plaintiff, this Court will refrain from addressing said issue herein.

## CONCLUSION

Pursuant to the foregoing, co-defendant Scotiabank's motion for summary judgment (Docket No. 28) is **GRANTED**. Plaintiff's claims against Scotiabank are hereby **DISMISSED WITH PREJUDICE**. Partial judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, November 18, 2013.

S/ JUAN M. PÉREZ-GIMÉNEZ
JUAN M. PÉREZ-GIMÉNEZ
UNITED STATES DISTRICT JUDGE